Samuel D. Brotman (CA Bar No. 274966)
sbrotman@sambrotman.com
BROTMAN LAW
12636 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (619) 378-3138

Attorneys for Plaintiff
Coleman Environmental Engineering, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| COLEMAN ENVIRONMENTAL ENGINEERING, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 8:26-cv-02922<br><br>**COMPLAINT FOR REFUND OF FEDERAL EMPLOYMENT TAXES AND EMPLOYEE RETENTION CREDITS**<br><br>(26 U.S.C. § 7422; 28 U.S.C. § 1346(a)(1)) |

Plaintiff Coleman Environmental Engineering, Inc. ("CEE"), by and through its undersigned counsel, alleges as follows:

**NATURE OF THE ACTION**

1. This Court has jurisdiction over this tax refund action under 28 U.S.C. § 1346(a)(1). This is an action for refund of federal employment taxes and the refundable Employee Retention Credit ("ERC") for the third calendar quarter of

2021. CEE seeks $2,243,694.79 in refundable ERC, plus statutory interest and such other amounts as are established by the administrative refund claim and proof. The claimed ERC is a statutory refundable credit based on qualified wages and is not limited to the amount of employment-tax deposits reflected on the original quarterly Form 941.

2. CEE does not base this claim on a decline in gross receipts. CEE relies on the separate statutory pathway for an employer whose trade or business operations were fully or partially suspended because of governmental orders limiting commerce, travel, or group meetings due to COVID-19. During the third quarter of 2021, binding California workplace-safety orders, enforceable by citation, civil penalty, and an order prohibiting the operation, required CEE to keep its field crews in separate groups in its vehicles and in its employer-provided housing, and to maintain the written COVID-19 Prevention Program under which CEE had stopped transporting its crews together and stopped lodging its crews together. The orders prevented CEE from performing field work in the normal course that depended on moving and housing crews together, and CEE will establish the specific affected work, including field work that could not be performed or that CEE declined or delayed, through CEE's records, dispatch and payroll records, prime-contractor records, and the testimony of employees and managers who worked in the field during the quarter.

3. CEE performed environmental, vegetation-management, inspection, construction-support, and utility-field services. Its work required employees to travel to and among field locations, work in crews, coordinate at jobsites, use employer-arranged vehicles, and, for distant assignments, use employer-arranged lodging. Those core field functions could not be performed remotely in a comparable manner.

4. These binding requirements stopped two operations of CEE's field business outright. First, CEE stopped transporting its field crews together in shared vehicles, and its field employees instead drove alone. Second, CEE stopped lodging its field employees together in shared rooms, and its field employees instead were lodged singly. Transporting and housing crews together was how CEE moved and staffed its field workforce for distant and multi-site assignments, and neither operation could be performed during the covered period.

5. CEE remained in operation as an essential or infrastructure-related business. Continued operation did not eliminate a partial suspension, because binding governmental requirements restricted a more-than-nominal portion of CEE's field business and had a more-than-nominal effect on its ability to provide services in the normal course.

## PARTIES

6. Plaintiff Coleman Environmental Engineering, Inc. is a California corporation, California Secretary of State Entity No. 3873316, organized February 8, 2016. When this action was filed, CEE's principal place of business was in Anaheim, Orange County, California, at 2331 West Lincoln Avenue, Main Suite, Anaheim, California 92801, where CEE's officers direct, control, and coordinate its business. CEE moved its principal place of business from Upper Lake, California to Anaheim in October 2023. The facts establishing CEE's Anaheim principal place of business are set out in the concurrently filed Declaration of Jacob L. Morrow. During the quarter at issue, CEE employed workers and conducted substantial field operations throughout California.

7. The taxpayer name appearing on the Form 941-X is Coleman Environmental Engineering, Inc. The taxpayer identification number ends in 6282. The address appearing on the Form 941-X is 101 W. Main Street, Suite 101, Norfolk, Virginia 23510.

8. Defendant is the United States of America.

## JURISDICTION, VENUE, AND TIMELINESS

9. This Court has jurisdiction under 28 U.S.C. § 1346(a)(1). CEE satisfied the administrative-claim requirement of 26 U.S.C. § 7422(a) by filing a Form 941-X for the third quarter of 2021. Venue is proper in this District and in the Southern Division under 28 U.S.C. §§ 1402(a)(2) and 84(c) because, when this action was filed, CEE's principal place of business was in Anaheim, Orange County, California, as alleged in paragraph 6.

10. CEE signed the Form 941-X for the third quarter of 2021 on April 4, 2023. The paid preparer, Michelle Abel of Premier Small Business Services, Inc., transmitted the Form 941-X to the Internal Revenue Service by certified mail on CEE's behalf. The IRS's Letter 105C for the third quarter of 2021 records April 10, 2023 as the date the refund claim was received. More than six months elapsed after filing of the claim before commencement of this action.

11. For the third quarter of 2021, the IRS issued a Letter 105C dated October 7, 2024, sent by certified mail, disallowing CEE's claim of $2,243,694.79 for the tax period ending September 30, 2021. The Letter 105C states that the claim was received April 10, 2023. It bears certified-mail article number 9307110756202930019584 and was addressed to CEE at P.O. Box 665108, Dallas, Texas 75266-5108. It states that the IRS disallowed the claim because it concluded that no governmental orders fully or partially suspended CEE's trade or business and that CEE did not satisfy the gross-receipts test. CEE contests the governmental-order determination and relies on the partial-suspension ground presented in its administrative claim. This action is commenced within the two-year period prescribed by 26 U.S.C. § 6532(a)(1).

## ADMINISTRATIVE REFUND CLAIM

12. On April 4, 2023, CEE, through its then-Chief Executive Officer Lee Weisenberg, signed the Form 941-X for the third quarter of 2021. Michelle Abel of Premier Small Business Services, Inc. was identified on the Form 941-X as the paid preparer.

13. The Form 941-X asserted that CEE had been partially suspended through the third quarter of 2021 because government mandates required employees to distance in performing CEE's work, identifying operational consequences including employees driving separately and altered lodging arrangements. CEE's judicial claim rests on that same governmental-order and partial-suspension ground.

14. The Form 941-X for the third quarter of 2021 claimed qualified wages of $3,205,278.27 and an ERC of $2,243,694.79.

15. A true and correct copy of CEE's Form 941-X for the third quarter of 2021 is attached as Exhibit A and incorporated by reference.

16. A true and correct copy of the IRS Letter 105C dated October 7, 2024 for the third quarter of 2021, together with the related IRS correspondence and certified-mail imaging presently available to CEE, is attached as Exhibit B and incorporated by reference.

**TAX REFUND INFORMATION**

17. The tax period for which a refund is sought is the third calendar quarter of 2021.

18. CEE made federal employment-tax deposits with respect to wages paid during the quarter through the Electronic Federal Tax Payment System. Those deposits are the underlying employment-tax payments reflected in CEE's payroll-tax records; they are not the measure or ceiling of CEE's ERC claim. The refundable amount of the ERC that exceeds the employment taxes otherwise due for the quarter is treated as an overpayment under 26 U.S.C. §§ 6402 and

3134(b)(3) and is refundable as an overpayment. CEE's retained Form 941 and Schedule B for the third quarter of 2021 reflect underlying federal employment-tax deposits of $1,531,498.68.

19. For purposes of the refund-limitation rules, 26 U.S.C. § 6513(c) treats employment taxes with respect to remuneration paid during 2021 that were paid before April 15, 2022 as paid on April 15, 2022, and treats a qualifying quarterly employment-tax return filed before that date as filed on April 15, 2022.

20. CEE filed its refund claim in April 2023 by certified mail through Michelle Abel of Premier Small Business Services, Inc. The Letter 105C confirms the IRS received the claim on April 10, 2023.

**GOVERNMENTAL RESTRICTIONS AND PARTIAL SUSPENSION**

21. Beginning before 2021, Title 8, California Code of Regulations §§ 3205, 3205.3, and 3205.4, the COVID-19 Prevention Emergency Temporary Standards, were binding workplace rules applicable to covered California employers, enforced by the California Division of Occupational Safety and Health. Through June 16, 2021, those rules required, among other things, that employees generally be separated by at least six feet, that a vehicle operator and passengers be separated by at least three feet in all directions regardless of the vehicle's normal capacity, and that employer-provided housing assign residents by household, crew, or worksite, keep beds at least six feet apart, and not use bunk beds. To comply, CEE stopped transporting its field crews together and had each field employee drive alone, and CEE stopped lodging its field employees two to a room and lodged them singly.

22. Effective June 17, 2021, California revised the Emergency Temporary Standards, and the revised standards continued binding controls through the third quarter of 2021. Revised § 3205.4 required covered employer-provided transportation, to the extent feasible, to assign employees who share vehicles to

distinct groups and to keep those groups separate during transportation, work activities, and employer-provided housing, prioritized by household, crew, or workplace, and reached transportation of employees among different workplaces and jobsites. Revised § 3205.3 likewise required distinct resident groups in covered employer-provided housing, including hotels and motels, prioritized by household, crew, or workplace. Throughout the third quarter of 2021, revised § 3205 also continued to require every covered employer to establish, implement, and maintain an effective written COVID-19 Prevention Program.

23. CEE's written COVID-19 Prevention Program continued the separated crew transport and separated crew lodging it had adopted, and abandoning those controls would have exposed CEE to citation for failing to implement an effective program.

24. During the third quarter of 2021, CEE's affected field crews were not fully vaccinated within the meaning of 8 California Code of Regulations § 3205(b)(9), so the exceptions in §§ 3205.3 and 3205.4 for housing and vehicles in which all occupants are fully vaccinated did not apply, and those sections continued to require CEE to keep its crews in distinct, separated groups in its vehicles and housing to the extent feasible.

25. These standards were occupational safety standards enforced by the California Division of Occupational Safety and Health, which could cite an employer for each violation and assess civil penalties (California Labor Code §§ 6317, 6319, and 6427), and, where an operation exposed workers to the risk of COVID-19 infection so as to constitute an imminent hazard, prohibit the operation (California Labor Code § 6325, as amended by Assembly Bill 685, effective January 1, 2021, a provision that governed the 2021 quarters and was later repealed effective January 1, 2023). CEE's compliance was compelled, not voluntary.

26. The requirements stopped CEE's shared-vehicle crew transport and shared crew lodging and prevented CEE from performing field work in the normal course that depended on moving and housing crews together. The precise crews, dates, locations, and affected work will be established through CEE's records, detailed payroll records, third-party records from prime contractors and payroll and ERC service providers, and the testimony of employees and managers who worked in the field during the quarter.

27. CEE's affected California field operations, including its crew-transport and crew-lodging operations and the field work that depended on them, constituted more than a nominal portion of CEE's business, and the government-required controls had more than a nominal effect on CEE's ability to provide services in the normal course during the quarter.

28. CEE paid qualified wages during the quarter. CEE will establish the employee-level qualified-wage calculations through payroll records, IRS records, and other competent evidence, including records being obtained from Premier Small Business Services, Inc., Payroll Vault-related entities, prime contractors, and other third parties.

**COUNT I - REFUND OF EMPLOYMENT TAXES AND EMPLOYEE RETENTION CREDIT**

29. CEE realleges and incorporates paragraphs 1 through 28.

30. For the third quarter of 2021, the Employee Retention Credit was available under 26 U.S.C. § 3134 for wages paid after June 30, 2021 and before October 1, 2021.

31. CEE was an eligible employer during the quarter because governmental orders and binding governmental requirements related to COVID-19 partially suspended or materially restricted CEE's trade or business operations. CEE's eligibility does not depend on the gross-receipts test.

32. CEE paid qualified wages during the quarter and timely claimed the credit on its Form 941-X for the third quarter of 2021. The refundable ERC claimed is determined from qualified wages under 26 U.S.C. § 3134 and is not limited to the aggregate employment-tax deposits reflected on the original Form 941.

33. The IRS formally disallowed CEE's claim by Letter 105C. The United States therefore has money belonging to CEE that should be refunded.

34. CEE is entitled to judgment of $2,243,694.79, or such other amount as the Court determines is established by the evidence and within the administrative refund claim, together with statutory interest under 26 U.S.C. § 6611 and other relief permitted by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Coleman Environmental Engineering, Inc. requests that the Court enter judgment:

1. Awarding CEE a refund of $2,243,694.79 for the third quarter of 2021, or such amount as is proven and legally recoverable within the administrative claim;
2. Awarding statutory interest under 26 U.S.C. § 6611;
3. Awarding allowable costs; and
4. Granting such other relief as the Court deems just and proper.

Dated: October 5, 2026

Respectfully submitted,

BROTMAN LAW

By: *<u>/s/ Samuel D. Brotman</u>*

Samuel D. Brotman

Attorney for Plaintiff
Coleman Environmental Engineering, Inc.

**EXHIBIT LIST**

Exhibit A - Form 941-X, third quarter of 2021

Exhibit B - IRS Letter 105C dated October 7, 2024, and related certified-mail and IRS correspondence, third quarter of 2021